UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA DRAKE, et al.,

        Plaintiffs,

v.

        CASE NO. 1:10-cv-185

        HON. ROBERT J. JONKER

BRIANNA SCOTT,

        Defendant.
_____/

## OPINION AND ORDER

This case stems from an acrimonious dissolution of a two-person law firm. One of the partners, along with her attorney and a former employee, brought federal and state claims of eavesdropping against the other partner. Defendant filed a motion for summary judgment on December 16, 2010 (docket # 33). Plaintiffs responded to the motion (docket # 46) and Defendant replied (docket # 49). The Court heard oral argument on February 15, 2011, took the motion under advisement (docket # 53), and ordered the parties to pursue continued mediation (docket # 56). The matter is now ready for partial decision. Except as specifically addressed and decided in this Opinion and Order, Defendant's motion remains under advisement.

### BACKGROUND

Defendant Brianna Scott and Plaintiff Melissa Drake practiced law together in a two-person firm, Drake & Scott PLLC. (Compl., docket # 1, ¶ 8.) The firm employed three people: Diane Vanderstelt, Marsha Storck, and Plaintiff Madelyn DeJusto, who is also Drake's mother. (Def. Mot.,

1

docket # 33, Ex. 2, Drake Dep., p. 10-11.) The relationship between the partners began to erode, and by late 2009 Drake and Scott had agreed to dissolve the firm, effective January 31, 2010. (Compl., docket # 1, ¶ 9.) Scott actually sent the certificate of dissolution to the appropriate Michigan agency on December 30, 2009. (Def. Mot., docket # 33, Ex. 3, Certificate of Dissolution.) Apparently unsatisfied with the progress of the dissolution, Scott brought claims against Drake in Muskegon County Circuit Court on January 11, 2011, and requested that the court supervise the winding up process. (Def. Mot., docket # 33, Ex. 4.) Plaintiff Douglas Springstead represented Drake in that lawsuit against Scott. (Compl., ¶ 11.) The state court stayed the case after Drake filed for bankruptcy in federal court.[1]

Plaintiffs filed their complaint in this Court on February 23, 2010, alleging violations of the Federal Wiretapping Act, 18 U.S.C. § 2510 *et seq*. and Michigan's eavesdropping statute, M.C.L. § 750.539 *et seq*. Specifically, Plaintiffs allege that Scott illegally monitored their computer and phone activity. Scott moves for summary judgment on two grounds. First, Scott claims that Plaintiffs' claims are conclusory and must fail because Plaintiffs have no evidence that she used a device to accomplish this alleged monitoring, and that the presence of a "device" is a statutory prerequisite to liability. Second Scott claims that in any event at least Plaintiff DeJusto's federal claims fail under the "business exception" and "consent exception" found in the federal statute. This

---

[1] In addition to the facts described in this paragraph, the record is replete with examples of the partners' inability to work together. Drake and Scott each filed grievances against the other with the State Bar of Michigan. They both sought temporary restraining orders or personal protection orders. When Scott terminated DeJusto's employment on January 19, 2010, allegedly for violating the temporary restraining order issued in the Muskegon County action and for spending too much time online at work, Drake rehired her mother that day. In fact, Scott called the police when DeJusto did not leave the firm's premises. Even the parties describe their relationship as tense and filled with animosity, and the truth of these statements is abundantly evident to this Court.

Opinion and Order addresses only the narrow issue framed by Scott's first theory of summary judgment. All other possible bases for summary judgment remain under advisement.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Schreiber v. Philips Display Components Co.*, 580 F.3d 355, 363 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56). The moving party must "inform the district court of the basis for its motion," and it must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under federal law, "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication" shall be subject to sanctions. 18 U.S.C. § 2511(a). "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The statute requires the use of an actual device, not just listening to one side of conversations or looking at someone's computer screen. *See United States v. Meriwether*, 917 F.2d 955, 960 (6th Cir. 1990). Plaintiffs

may bring a civil suit and receive damages. *See DirecTV, Inc. v. Barnes*, 302 F. Supp. 2d 774, 785 (W.D. Mich. 2004) ("it is well established that [18 U.S.C.] § 2520(a) provides a private right of action for violations of [18 U.S.C. §] 2511"); 18 U.S.C. § 2520(c)(2). However, "district courts have the discretion to decline the imposition of damages." *Dorris v. Absher*, 179 F.4d 420, 429 (6th Cir. 1999).

In Michigan, "[a]ny person who is present or who is not present during a private conversation and who willfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto" is guilty of a felony. M.C.L. § 750.539c. "Eavesdropping" is defined as "to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse." M.C.L. § 750.539a(2). Like the federal statute, Michigan law requires that the eavesdropping be "accomplished through the willful use" of a device. *People v. Stone*, 463 Mich. 558, 564-565 (2001). "Any parties to any conversation upon which eavesdropping is practiced contrary to this act shall be entitled to . . . civil remedies," including actual and punitive damages. M.C.L. § 750.539h.

"A plaintiff need not produce direct evidence to establish that a communication was received or intercepted, but may rely upon circumstantial evidence." *Barnes*, 302 F. Supp. 2d at 728. To succeed, "the plaintiff must produce circumstantial evidence sufficient to support the conclusion that there was an actual interception." *Id*. at 783-84. "[D]irect evidence is not required," particularly where a plaintiff can establish motive and opportunity. *United States v. Szymuszkiewicz*, 622 F.3d 701, 703 (7th Cir. 2010).

## ANALYSIS

To establish their claims of illegal monitoring, Plaintiffs rely primarily on Defendant's own statements. On January 11, 2011, Scott sent an email to all firm employees, and informed them that "[t]he internet and phones are being monitored. So I hope you have not done or discussed anything that you do not wish to be public." (Def. Mot., docket # 33, Ex. 17.) Scott made her second statement to the police officer who was called to the firm's office on January 19, 2010, after Scott terminated DeJusto. In the investigation report, the officer noted that Scott "advised that the computer and phone systems are being monitored for any discrepancies involving the business and its employees." (Def. Mot., docket # 33, Ex. 20.) Finally, Drake stated during her deposition that after Scott fired DeJusto, Scott told Drake that "it didn't matter anyways because your internet usage and communications were being monitored by the IT people because they had remote access to the server." (Pl. Resp., docket # 46, Ex. 13, Drake Dep., p. 48.)

Scott does not deny that she made at least the first two statements, but instead attempts to provide context to her words. She clarified in her deposition that she was watching Plaintiffs Drake and DeJusto and attempting to overhear their conversations, but she was not using a device to monitor them. (Def. Mot., docket # 33, Ex. 1, Scott Dep., p. 49-50.) She requested that the other employees of the firm, Storck and Vanderstelt, also "spy" on Plaintiffs Drake and DeJusto in this manner. (Def. Mot., docket # 33, Ex. 12, Email; Ex. 13, Storck Aff., ¶ 5; Ex. 14, Vanderstelt Aff., ¶ 5.) Scott argues that when she said she was "monitoring," she meant a specific type of monitoring that did not include the use of a device.

Scott's admissions and the meaning of them are fact questions for the jury. Scott does not deny making the first two statements. Moreover, she does not specifically deny Drake's report that

5

Scott said she was using off-site technicians to monitor Plaintiffs' communications, but instead claims that she was only listening and watching, not using a device. (Even if Scott did deny it, Drake's report of Scott's words would still be admissible evidence as a party admission and as a statement against interest.) Defendant's post-incident explanations of what her words meant only further convinces the Court that a material question of fact exists. Defendant stated that she monitored the phone and computer systems, and at one point stated that the monitoring occurred through technicians outside the firm. A reasonable jury could find, after determining the credibility of the witnesses and the other evidence before it, that Defendant meant she was monitoring through the use a device, specifically outside technicians. Accordingly, a material fact exists over whether Defendant's statements are sufficient to establish that she was using a device to monitor Plaintiffs' phone and computer activity. The Court cannot, on a motion for summary judgment, choose between two plausible explanations for Defendant's words.

The remaining circumstantial evidence presented by Plaintiffs supports the Court's finding that this fact dispute cannot be decided on a motion for summary judgment.

Plaintiffs first point to DeJusto's statement in her deposition that she heard an odd clicking or screeching noise on her telephone beginning in December 2009 or January 2010, which she recognized as coming from a monitoring device, based on her previous work at a telephone company. (Def. Mot., docket # 33, Ex. 19, DeJusto Dep. 19-21, 41-42.) Defendant does not specifically rebut this evidence, but claims that it should not be admissible under Fed. R. Civ. P. 37(c). In considering the record, the Court does not exclude DeJusto's deposition as a discovery sanction, mainly because Defendant never moved for such a sanction under Rule 37. Further, there is no indication that Defendant was or will be prejudiced. Defendant's counsel had the opportunity

to cross examine DeJusto about her statements, and should the case go to trial, counsel will have use of third party subpoenas prior to trial.

Second, Plaintiffs claim that Defendant knew things she could only have known if she monitored their conversations. The parties refer to a specific conversation that took place on January 6, 2010, and the record contains many disputes about the nature of the events at issue.[2] The back and forth between the parties only confirms that this aspect of the case cannot be decided on a motion for summary judgment. Instead, a jury must determine the credibility of the witnesses' statements and the weight of this evidence.

Finally, Plaintiffs point to statements made by computer experts who worked on the firm's computer and phone systems as evidence of Defendant's monitoring. The parties dispute the meaning of a variety of statements made by these witnesses. Like the evidence discussed above, a jury should decide whether the various witnesses are credible and the weight that should be given their statements.

---

[2] The conversation occurred between Plaintiffs Springstead and Drake. During that conversation, Springstead told Drake to make a particular comment to Scott. (Pl. Resp., docket # 46, Ex. 13, Drake Dep., p. 105.) Drake stated that she was in her office during her conversation with Springstead and that she made the comment to Scott, who was at the firm's office that day. (*Id*.) Springstead stated in his deposition that he asked Drake if anyone was with her during their conversation, and Drake said no. (Def. Mot., docket # 33, Ex. 7, Springstead Dep., p. 34.) On January 7, 2010, Scott wrote to Springstead and informed him that she knew he had advised Drake to make the comment to her. (Def. Mot., docket # 33, Ex. 16, Email.) Scott stated that she was not in the office on January 6, 2010, and that Vanderstelt informed her Springstead had advised Drake to make the comment. (Def. Mot., docket # 33, Ex. 1, Scott Dep., p. 29-30.) In an affidavit Vanderstelt stated that the conversation between Drake and Springstead happened in Vanderstelt's office and on her telephone, that part of the conversation occurred on speaker-phone, and that Drake made the comment to Scott, who was in the office. (Def. Mot., docket # 33, Ex. 14, Vanderstelt Aff., ¶¶ 13-17.)

In sum, Plaintiffs have established sufficient evidence of a prima facie case of monitoring with a device. The record reflects that there is a classic fact dispute on this issue. Accordingly, the Court rejects Defendant's first theory of summary judgment (docket # 33).

## REMAINING ISSUES

Defendant offered two defenses as an alternative theory for summary judgment, at least as to Plaintiff DeJusto. There may be other possible bases for summary judgment, or partial summary judgment. For example, monitoring of computer activity on firm-owned equipment, using only the capability built into the system itself (including the possibility of off-site access by an authorized IT servicer), may not amount to eavesdropping within the meaning of the statute. Indeed, if it were enough to establish a claim for eavesdropping simply to say a business accessed information stored on a computer server that exists for that very purpose, it would seem that every business with a server is engaged in eavesdropping every day, and that cannot be the law. There may also be reasonable questions about whether the Court should even reach the merits of the state law claim at all, or whether that claim should be dismissed without prejudice under 28 U.S.C. § 1367 because the state and federal statutes differ in important respects. In any event, the parties chose not to concentrate on these issues, and thus the Court is not prepared to address them without further briefing by the parties. The Court offers its comments in this section strictly as a guide for issues the parties may wish to address in further briefing, and not in any way as a preliminary ruling on the merits of any of these issues.

The federal statute allows for a defense to liability when a party uses a device to intercept in the ordinary course of business. *See* 18 U.S.C. § 2510(5)(a)(i). "[T]here are two essential elements that must be proved before this becomes a viable defense: the intercepting equipment must be

furnished to the user by the phone company or connected to the phone line, and it must be used in the ordinary course of business." *Deal v. Spears*, 980 F.2d 1153, 1157 (8th Cir. 1992); *see United States v. Murdock*, 63 F.3d 1391, 1393 (6th Cir. 1995) (acknowledging that this exception only applies to "certain types of equipment"). Neither party has addressed whether Defendant has satisfied the first element of this exception. Moreover, the Court's independent research reveals that many courts, when considering the "ordinary course of business" requirement, balance the strength of the justification provided by the alleged wrongdoer with other factors, including notice to the plaintiffs and the scope of the monitoring. *See, e.g., Briggs v. American Air Filter Co., Inc.*, 630 F.2d 414, 420 (5th Cir. 1980); *Deal*, 980 F.2d at 1158; *Murdock*, 63 F.3d at 1369-97. Although the Sixth Circuit did not specifically engage in this type of analysis in *Adams v. City of Battle Creek*, 250 F.3d 980 (6th Cir. 2001), this balancing test may be useful in the analysis of this case.

       The federal statute also carves out an exception for consent. Again, the parties have not focused their briefing on this defense, and thus the Court is unable to determine whether it can be applied in this case. The Court notes that consent can be implied, presumably from materials, including the employee handbook, that are part of the summary judgment record. However, "knowledge of the *capability* of monitoring alone cannot be considered implied consent." *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983) (emphasis in original); *see Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990). It is also unclear from the parties' briefing and from the Court's own research whether the consent (express or implied) of a principal, such as Drake, can bind or otherwise be imputed to her agent, such as Springstead, her attorney.

       Finally, neither party has addressed the possibility of exceptions to the state statute and how they interplay with the federal exceptions. The state statute does not have express language like the

federal statute creating the ordinary course of business defense, and it deals with consent in a different way. Any such potential defenses or exceptions to liability would need to flow from a proper construction and limitation of the statutory words defining the elements of liability. This may be a task best left to the state court, and, accordingly, the Court and the parties may be best served by a dismissal without prejudice of the state law claims under 28 U.S.C. § 1367.

The parties are free to supplement their briefing on these issues by **March 21, 2011**.

**IT IS SO ORDERED**.


Dated:     February 28, 2011              /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         UNITED STATES DISTRICT JUDGE